**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. ID-18-1161-BKuF |
| WILLIAM MICHAEL NICHOLSON (deceased) and JOAN KAY NICHOLSON, | Bk. No. 2:17-bk-20744-TLM |
| Debtors. | |
| WILLIAM MICHAEL NICHOLSON (deceased); JOAN KAY NICHOLSON, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| IFG TIMBER, L.L.C.; J. FORD ELSAESSER, Chapter 7 Trustee, | |
| Appellees. | |

Submitted Without Oral Argument on May 23, 2019

Filed – June 18, 2019

Appeal from the United States Bankruptcy Court

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

for the District of Idaho

Honorable Terry L. Myers, Bankruptcy Judge, Presiding

———

Appearances:    James McMillan on brief for Appellants William and Joan Nicholson; Theron J. De Smet of Ramsden, Marfice, Ealy & Harris, LLP on brief for Appellee IFG Timber, L.L.C.; Appellee J. Ford Elsaesser, Chapter 7 Trustee, did not appear.

———

Before:    BRAND, KURTZ and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellants William Nicholson (deceased) and Joan Nicholson appeal an order determining that the automatic stay did not apply to IFG Timber, L.L.C.'s pending eviction proceeding against them. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Prepetition events**

**1.    Background of the parties**

In 1995, Nicholsons purchased several buildings located on a 3,000-acre parcel of land owned by the Coeur d'Alene Placer Mining Company ("CDA Placer"). Nicholsons used one of the buildings for their residence. At the time of the purchase, Nicholsons entered into a one-year written lease

2

with CDA Placer for the half-acre[1] parcel of land on which their buildings were located ("Homesite"). Nicholsons and CDA Placer agreed to renew the lease annually until 2014.

Due to a pending sale of CDA Placer's land, Nicholsons were given written notice in January 2014 that their tenancy was being terminated and that they were to vacate the Homesite by June 30, 2014. In response, counsel for Nicholsons informed CDA Placer that it was violating their right of first refusal for the Homesite and that they might seek to recover from CDA Placer the value of the buildings, which were not movable. To avoid litigation, Nicholsons were willing to accept the Homesite, plus an additional acre, in consideration of the $2,250 already paid for the 2014 lease. Counsel for CDA Placer responded that he was unaware of any right of first refusal for Nicholsons, but that he would forward their offer to his client. However, he was fairly certain that his client would not accept it.

On March 28, 2014, CDA Placer sold the Land, including the Homesite, to IFG. IFG was not interested in selling or leasing the Homesite to Nicholsons and told them to vacate the premises by June 30, 2014.

## 2. Nicholsons' first lawsuit

On June 30, 2014, Nicholsons filed a lawsuit against CDA Placer and IFG in the Idaho state court, alleging various claims including breach of

---

[1] Nicholsons disputed whether the Homesite consisted of one-half or one full acre of land.

oral contract ("First Lawsuit"). IFG filed a counterclaim seeking to evict Nicholsons. The trial court granted the defendants summary judgment on Nicholsons' complaint and granted IFG summary judgment for unlawful detainer. Nicholsons moved for reconsideration, which the trial court denied.

Nicholsons appealed the judgment in the First Lawsuit to the Idaho Supreme Court. Meanwhile, the trial court entered an amended judgment, granting IFG possession of the Homesite, a writ of ejectment and an award of damages.

The Idaho Supreme Court affirmed and remanded the First Lawsuit with an award of attorney's fees and costs. On remand, the trial court entered another amended judgment in the First Lawsuit ("Second Amended Judgment"), which again granted IFG possession of the Homesite, a writ of ejectment and additional damages. Thereafter, the trial court issued a writ of ejectment, directing the sheriff to eject Nicholsons from the Homesite.

Nicholsons moved to set aside the Second Amended Judgment under Idaho Rule of Civil Procedure 60(b), which the trial court denied ("60(b) Order"). They appealed the 60(b) Order to the Idaho Supreme Court.

### 3. Nicholsons' second lawsuit

While the 60(b) Order from the First Lawsuit was pending on appeal,

4

Nicholsons filed a second lawsuit against CDA Placer and IFG in the Idaho state court on November 21, 2017 (the "Second Lawsuit"). The complaint alleged a claim for equitable relief from the Second Amended Judgment and a claim for fraud. Substantively, the Second Lawsuit sought the same relief as in the First Lawsuit. It also appeared to be a re-litigation of the failed 60(b) motion in the First Lawsuit.

## B.    Postpetition events

### 1.    The bankruptcy and dismissal of the Second Lawsuit

Nicholsons filed their chapter 7[2] bankruptcy case on December 5, 2017. They did not disclose in their petition that IFG had obtained an eviction judgment against them prior to the filing or file a certification with their petition in accordance with § 362(l).[3] J. Ford Elsaesser was appointed as the chapter 7 trustee ("Trustee"). The Second Lawsuit was dismissed in February 2018. However, a final judgment in accordance with Idaho Civil Rule of Procedure 54(a)(1) was lacking.

### 2.    Motion for relief from stay

IFG moved for relief from stay ("Stay Relief Motion") so that it could resume its eviction of Nicholsons. IFG asserted that the automatic stay did

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3] If there is a prepetition judgment for possession, the debtor may suspend the enforcement of the judgment through the procedures elaborated in § 362(l). Nicholsons never alleged that the "safe harbor" of § 362(l) applied in this case.

not apply pursuant to § 362(b)(22), because IFG obtained a judgment for possession of the Homesite prior to Nicholsons' bankruptcy filing.

Nicholsons opposed the Stay Relief Motion. They argued that the pending appeal of the 60(b) Order in the First Lawsuit and the lack of a final order dismissing the Second Lawsuit gave them a sufficient property interest in the Homesite such that the automatic stay remained in effect. In other words, because the Second Amended Judgment was subject to reversal or vacatur in either action and not final, the exception to the automatic stay under § 362(b)(22) did not apply. Alternatively, Nicholsons requested that the court impose a stay of the eviction under § 105(a).

After a hearing, the bankruptcy court issued its oral ruling denying the Stay Relief Motion. The court found that such relief was unnecessary, because the automatic stay did not apply in this case: Nicholsons' potential collateral attack on the Second Amended Judgment with the appeal of the 60(b) Order did not change the fact that IFG held a final, non-appealable judgment for possession of the Homesite prior to the petition date.[4]

Nicholsons timely appealed the bankruptcy court's later written order. Both the bankruptcy court and this Panel denied their requests for

---

[4] The bankruptcy court also denied Nicholsons' request for relief under § 105(a), finding that the court could not create a stay where one is specifically excluded by the Code. Nicholsons have not raised this issue on appeal. Accordingly, it has been waived. *Golden v. Chi. Title Ins. Co. (In re Choo)*, 273 B.R. 608, 613 (9th Cir. BAP 2002) (arguments not raised in appellant's opening brief are deemed waived).

stay pending appeal.

## C.  Post-appeal events[5]

After Nicholsons filed this appeal, the bankruptcy court approved
Trustee's settlement of the estate's claims against CDA Placer and IFG for
$5,000. Thereafter, the defendants obtained a dismissal of the appeal of the
60(b) Order before the Idaho Supreme Court, and the trial court entered a
final judgment in the Second Lawsuit dismissing it with prejudice. Another
Writ of Ejectment was issued and Nicholsons were evicted.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and
157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158(b).

## III. ISSUE

Did the bankruptcy court err in determining that the exception to the
automatic stay under § 362(b)(22) applied in this case?

---

[5] We may take judicial notice of events in the bankruptcy case occurring after the
filing of an appeal if they resolve the dispute between the parties. *Ellis v. Yu (In re Ellis)*,
523 B.R. 673, 676 (9th Cir. BAP 2014) (citing *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081,
1087 (9th Cir. 2011) ("[I]f events subsequent to the filing of the case resolve the parties'
dispute, we must dismiss the case as moot.")). Although appellees have not argued that
this appeal is moot, we have an independent obligation to consider mootness sua
sponte. *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 997 (9th Cir. 2005). The test for
mootness is whether the appellate court can still grant effective relief to the appellant if
it decides the merits in his or her favor. *Id.* at 998. Despite Trustee's settlement with
CDA Placer and IFG and the dismissal of the appeal of the 60(b) Order and the Second
Lawsuit, it is not clear on this record that the appeal of the stay relief order is moot.
Accordingly, we will address the merits as presented.

## IV. STANDARD OF REVIEW

The bankruptcy court's determination regarding the scope or applicability of the automatic stay is reviewed de novo. *Lehman Commercial Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC)*, 423 B.R. 655, 663 (9th Cir. BAP 2009), *aff'd*, 654 F.3d 868 (9th Cir. 2011) (citing *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005) ("We review the [bankruptcy court's] interpretation of the bankruptcy code as a question of law and, therefore, review it de novo.")).

## V. DISCUSSION

**The bankruptcy court did not err in determining that the exception to the automatic stay under § 362(b)(22) applied**.

The filing of a bankruptcy petition generally triggers the application of the automatic stay and bars most actions by creditors against the debtor, including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" § 362(a)(3). However, § 362(b)(22) provides an exception to this general rule.

Under § 362(b)(22),[6] which was added to the Code in 2005, the

---

[6] More specifically, § 362(b)(22) provides that the automatic stay under § 362(a)(3) does not apply to the "continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition,

(continued...)

8

automatic stay will not apply to an eviction proceeding of a residential tenant where the landlord has obtained a prepetition "judgment for possession" of the residential real property. It is undisputed that IFG held a judgment for possession of the Homesite and a writ of ejectment prior to Nicholsons' bankruptcy filing. The issue on appeal is whether the exception to the automatic stay under § 362(b)(22) applies only if the landlord's prepetition "judgment for possession" is final and non-appealable at the time of the bankruptcy filing, and, if so, what constitutes a "final" judgment. Nicholsons argue that the Second Amended Judgment was not a "final" judgment for purposes of § 362(b)(22), because it was subject to reversal or vacatur given the appeal of the 60(b) Order and the Second Lawsuit. Nicholsons argue that these remedies to potentially set aside the Second Amended Judgment gave them an equitable interest in the Homesite, and that this equitable interest was subject to the automatic stay and stayed the eviction.

The Code does not define the phrase "judgment for possession" in § 362(b)(22). The few courts that have addressed this issue have interpreted the phrase to mean a final, non-appealable judgment. Thus, for the exception to the automatic stay to apply, the landlord must obtain a final, non-appealable judgment for possession prior to the debtor's bankruptcy

---

[6](...continued)
a judgment for possession of such property against the debtor."

filing. *See Bedford Hill Cmty. v. Brown (In re Brown)*, 545 B.R. 123, 126-27 (Bankr. W.D. Pa. 2016); *In re Tatum*, No. 14-03676, 2015 WL 1061673, at *3 (Bankr. S.D. Miss. Mar. 6, 2015); *In re Nitzsky*, 516 B.R. 846, 847 (Bankr. W.D.N.C. 2014); *In re Griggsby*, 404 B.R. 83, 86-87 (Bankr. S.D.N.Y. 2009); *Hous. Auth. of Beaver Cty. v. Alberts (In re Alberts)*, 381 B.R. 171, 177-78 (Bankr. W.D. Pa. 2008). The bankruptcy court here agreed that a landlord must obtain a final, non-appealable judgment for possession prior to the petition date in order for the stay exception under § 362(b)(22) to apply. We could not locate a case holding otherwise and the parties have cited none.

Further, with the exception of Griggsby, where finality of the judgment for possession was not disputed, the bankruptcy courts in the above cases found that the prepetition judgments for possession were not final because they were subject to "de novo" review on appeal under state law at the time each debtor filed for bankruptcy. *See In re Brown*, 545 B.R. at 127-29 (appeal to court of common pleas, where the debtor is entitled to a trial de novo, deprives a judgment for possession of the finality necessary for § 362(b)(22)); *In re Tatum*, 2015 WL 1061673, at *3 (citing *Nitzsky* and *Alberts*); *In re Nitzsky*, 516 B.R. at 848-49 (judgment in action for summary ejectment is not final when still subject to de novo review on appeal, even if the debtor has not filed an appeal); *In re Alberts*, 381 B.R. at 178-79 (cited by *Brown* and applying same state law).

However, the bankruptcy court distinguished Nicholsons' case based

10

on the nature of the appeal. Unlike the above cases, IFG's judgment for possession had already been appealed and affirmed by the Idaho Supreme Court prior to the petition date. And the appeal of the 60(b) Order, while maybe a potential collateral attack on the Second Amended Judgment, did not affect the judgment's finality. Thus, unlike the above cases, the Second Amended Judgment was not subject to de novo review when Nicholsons filed their bankruptcy case. Therefore, it was a "final" judgment and the exception to the automatic stay under § 362(b)(22) applied.

Nicholsons argue that the bankruptcy court erred in holding that the finality of a prepetition judgment for possession for purposes of § 362(b)(22) turns on the nature of the appeal — i.e., whether the standard of review of the judgment is de novo or abuse of discretion. We could not locate a case, and Nicholsons have cited none, where a bankruptcy court was faced with a judgment for possession that was subject to something other than de novo review on appeal. In any case, we disagree that the bankruptcy court erred on these facts. IFG held a final judgment for possession of the Homesite prior to Nicholsons' bankruptcy filing; neither the appeal of the 60(b) Order nor the Second Lawsuit affected the finality of that judgment. *See* Idaho R. Civ. P. 60(c)(2) (a motion for relief from judgment or order "does not affect the judgment's finality or suspend its operation"). Accordingly, the court did not err in determining that the exception to the automatic stay under § 362(b)(22) applied.

11

# VI. CONCLUSION

For the reasons stated above, we AFFIRM.